STATE OF NORTH CAROLINA v. JOHN WESLEY JONES

No. 435A90

(Filed 30 December 1994)

**1. Jury § 131 (NCI4th)— voir dire—softness of legal system— questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors in a capital trial whether they felt that the legal system may be too soft on criminals.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

**2. Jury § 142 (NCI4th)— voir dire—vote under particular facts—questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors how their decision would be affected if it was shown that many people in defendant's community thought highly of him, how they would vote if they thought defendant was probably guilty of first-degree murder but were not convinced beyond a reasonable doubt, how they would react if they were the only juror on a particular side or issue, or whether they would consider life imprisonment a severe enough penalty even though a young girl was injured, since those questions were an improper attempt to elicit in advance what the jurors' decision would be under a given state of facts.

**Am Jur 2d, Jury §§ 203, 205, 206.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

**3. Jury § 141 (NCI4th)— voir dire—parole eligibility—questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors in a capital trial about their understanding of the meaning of a life sentence since such questioning was an improper attempt to inject the subject of parole eligibility into the jury selection process.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

**4. Jury § 151 (NCI4th)— capital trial—death penalty beliefs—exclusion not error**

The trial court did not err in refusing to permit defendant to ask a prospective juror in a capital trial whether the juror believed "that every person convicted of murder, premeditated or intentional murder should be put to death" where the court specifically stated immediately thereafter that it would allow defendant to ask prospective jurors whether their "support for the death penalty [was] so strong that [they] would find it difficult or impossible to vote for life in prison for a person convicted of murder," since the question permitted by the court would allow defendant to determine whether prospective jurors would automatically sentence defendant to death upon his conviction for first-degree murder.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

**5. Jury § 145 (NCI4th)— voir dire—feeling about use of mitigating circumstances—question properly excluded**

The trial court did not err in refusing to allow the defendant in a capital trial to ask prospective jurors how they felt about the

concept of considering mitigating circumstances in determining an appropriate sentence.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

**6. Jury § 102 (NCI4th)— voir dire—pretrial publicity—death penalty inappropriate—questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors whether they had read anything which made them think that defendant should receive some sentence other than the death penalty where defendant was allowed to question jurors about their exposure to pretrial publicity and whether they had formed any opinions about the case as a result thereof.

**Am Jur 2d, Criminal Law § 941; Jury § 202.**

**7. Jury § 123 (NCI4th)— voir dire—questions about mental illness as mitigating circumstance—proper exclusion**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors in a capital trial a series of questions relating to their views of mental illness as a mitigating circumstance since the questions were hypothetical in nature and an impermissible attempt to indoctrinate the prospective jurors regarding the existence of a mitigating circumstance.

**Am Jur 2d, Jury § 203.**

**8. Jury § 138 (NCI4th)— voir dire—alcoholism as disease or illness—questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors whether they believed that alcoholism is a disease or an illness since no reasonable basis for the exercise of a peremptory challenge would be revealed by a response to this question, and counsel was permitted to ask jurors whether they had ever thought about, seen, or talked with alcoholics.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed. 26.**

**9. Jury § 145 (NCI4th)— voir dire—failure to reach unanimous sentencing verdict—life sentence—questions properly excluded**

The trial court properly refused to permit defense counsel to ask prospective jurors in a capital trial whether they understood that the trial court would automatically impose a life sentence if they could not reach a unanimous sentencing verdict.

**Am Jur 2d, Homicide § 548; Jury § 202.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

**10. Jury § 119 (NCI4th)— voir dire—exclusion of questions—similar questions allowed—error cured**

Any error in the trial court's refusal to permit defense counsel to ask a prospective juror in a first-degree murder trial certain questions concerning his ability to consider defendant's intoxication as it related to issues in the guilt/innocence and penalty phases of the trial was harmless where the court thereafter allowed counsel to ask the witness similar questions.

**Am Jur 2d, Jury § 207.**

**11. Jury § 145 (NCI4th)— voir dire—punishment for first-degree murder—questions properly excluded**

The trial court properly refused to permit defense counsel to ask prospective jurors whether they had any problem with "the law" that "with nothing else appearing the punishment for first degree murder is life in prison" because the question constituted an incomplete and ambiguous description of this state's capital sentencing scheme. N.C.G.S. § 15A-2000.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed 26.**

**12. Jury § 145 (NCI4th)— voir dire—first-degree murder—sentence—questions properly excluded**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors in a first-degree murder trial whether they believed the death penalty should be imposed because it is less expensive than keeping a person imprisoned for

life; whether they could impose a life sentence for "a terrible, tragic crime"; how they felt "about a person who could do such a thing"; and whether they believed that all persons convicted of first-degree murder should be treated equally.

**Am Jur 2d, Jury § 202.**

**Voir dire examination of prospective jurors under Rule 24(a) of Federal Rules of Criminal Procedure. 28 ALR Fed 26.**

**13. Indigent Persons § 27 (NCI4th)— motion for funds for investigator—insufficient showing of need**

The trial court did not err in denying an indigent defendant's motion for funds to hire an investigator to aid in the preparation of his defense to a charge of first-degree murder because defendant failed to make a particularized showing of need for an investigator where (1) defense counsel informed the court that he had been unable to locate certain persons with whom defendant had been associated and whom he anticipated calling as witnesses if the trial progressed to the sentencing phase, and (2) defense counsel contended that an investigator was needed to interview eyewitnesses to the killing because it would be "quite difficult" for defense counsel to do so in light of the rapidly approaching trial. Defendant's showing amounted to no more than a mere hope or suspicion that favorable evidence might be uncovered if the motion was granted.

**Am Jur 2d, Criminal Law §§ 955, 1006.**

**Right of indigent defendant in state criminal case to assistance of investigators. 81 ALR4th 259.**

**14. Jury § 260 (NCI4th)— peremptory challenges of black jurors—racially neutral reasons**

The State was properly permitted to exercise peremptory challenges against five black jurors in a first-degree murder trial for neutral, nonpretextual and specific reasons where the prosecutor stated the following reasons for peremptorily challenging these jurors: one juror attended school with the defendant; the second juror had been represented by defense counsel on more than one occasion; the third juror knew defendant, was acquainted with several defense witnesses, and had a relative who had been charged with murder, and defense counsel had performed

STATE v. JONES

[339 N.C. 114 (1994)]

legal services for her mother; the fourth juror failed to reveal during initial questioning that his aunt and brother would be witnesses for the defense and that he knew two other defense witnesses; and the fifth juror equivocated on his ability to consider imposing the death penalty in any case and had been charged within the last several years with assault inflicting serious injury.

**Am Jur 2d, Jury § 235.**

**Use of peremptory challenge to exclude from jury persons belonging to race or class. 79 ALR3d 14.**

15. **Criminal Law § 1318 (NCI4th)— capital case—preliminary instruction—pattern instruction given—refusal of requested instruction**

The trial court did not abuse its discretion by refusing to give defendant's requested preliminary instruction explaining the specific procedures of a capital case and instead giving the pattern jury instruction on the bifurcated nature of a capital trial.

**Am Jur 2d, Trial § 1441.**

16. **Jury § 223 (NCI4th)— death penalty views—excusal for cause**

The trial court did not erroneously excuse a juror for cause because of her death penalty views where the juror's answers to the prosecutor's questions may well have left the trial court with the definite impression that the juror would be unable to faithfully and impartially apply the law. Furthermore, the trial court's failure to attempt to rehabilitate the juror or to allow the defendant to attempt to do so was not error.

**Am Jur 2d, Jury §§ 289,290.**

**Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post *Witherspoon* cases. 39 ALR3d 550.**

17. **Evidence and Witnesses § 963 (NCI4th)— hearsay—medical diagnosis exception—preparation for trial**

Statements made by defendant to a medical expert who stated an opinion that at the time of a killing defendant was so intoxicated that he was incapable of premeditation and deliberation were not admissible as substantive evidence under the medical diagnosis and treatment exception to the hearsay rule set forth in

STATE v. JONES

[339 N.C. 114 (1994)]

N.C.G.S. § 8C-1, Rule 803(4) where the statements were made by defendant ten months after the killing for the purpose of preparing and presenting a defense to the crimes for which he stood accused rather than for the purpose of seeking treatment of a medical condition or a diagnosis of his condition to obtain treatment.

**Am Jur 2d, Evidence §§ 683, 685; Federal Rules of Evidence § 232.**

**Admissibility of statements made for purposes of medical diagnosis or treatment as hearsay exception under Rule 803(4) of Federal Rules of Evidence. 55 ALR Fed. 689.**

**Admissibility of physician's testimony as to patient's statements or declarations, other than res gestae, during medical examination. 37 ALR3d 778.**

**18. Evidence and Witnesses § 964 (NCI4th)— hearsay—medical diagnosis and treatment exception—statements by mother and wife**

Statements made by defendant's mother and wife to defendant's medical expert were not admissible as substantive evidence under the medical diagnosis and treatment exception to the hearsay rule set forth in Rule 803(4) because only the statements of the person being diagnosed or treated are excepted from the prohibition against hearsay.

**Am Jur 2d, Evidence §§ 683, 685; Federal Rules of Evidence § 232.**

**Admissibility of statements made for purposes of medical diagnosis or treatment as hearsay exception under Rule 803(4) of Federal Rules of Evidence. 55 ALR Fed. 689.**

**Admissibility of physician's testimony as to patient's statements or declarations, other than res gestae, during medical examination. 37 ALR3d 778.**

**19. Evidence and Witnesses §§ 2298, 3157 (NCI4th)— expert witness—opinion on reliability of information—exclusion as harmless error**

The trial court erred in refusing to permit defendant's expert medical witness, who opined that defendant was incapable of premeditation and deliberation due to extreme alcohol intoxica-

tion at the time of a killing, to state his opinion as to whether defendant was lying to him during his evaluation of defendant, since the testimony would not violate the rule prohibiting expert testimony concerning the truthfulness of a witness, and the testimony was admissible as an assessment of the reliability of the information upon which the expert based his opinion. However, the exclusion of this testimony was harmless error where defendant failed to show that there was a reasonable possibility that a different result would have been reached if the witness had been allowed to testify that he believed defendant was telling the truth.

**Am Jur 2d, Expert and Opinion Evidence §§ 164, 190; Witnesses §§ 1006 et seq.**

20. **Assault and Battery § 82 (NCI4th); Criminal Law § 775 (NCI4th)— discharging firearm into occupied vehicle— general intent crime—intoxication no defense**

The offense of discharging a firearm into an occupied vehicle is a general intent crime that does not require the State to prove any specific intent but only that the defendant performed the act which is forbidden by statute. Therefore, the trial court properly charged the jury that the law does not require any specific intent for the defendant to be guilty of the crime of discharging a firearm into occupied property and, since intoxication does not negate a general intent, also properly charged that the defendant's intoxication can have no bearing upon the determination of his guilt or innocence of this crime.

**Am Jur 2d, Criminal Law § 155; Weapons and Firearms § 29.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**Modern status of rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.**

21. **Homicide § 709 (NCI4th)— instructions on first-degree and second-degree murder—verdict of first-degree murder—failure to submit involuntary manslaughter as harmless error**

Where the jury was properly instructed on the elements of first-degree and second-degree murder and thereafter returned a verdict of guilty of first-degree murder based on premeditation

and deliberation, any error in the trial court's failure to instruct the jury on involuntary manslaughter is harmless even if the evidence would have supported such an instruction. The verdict of first-degree murder was not constitutionally infirm because of the failure to submit involuntary manslaughter since the submission of second-degree murder alleviated the danger that the jury would find the defendant guilty of first-degree murder rather than acquit him although it did not think he was guilty of first-degree murder.

**Am Jur 2d, Homicide § 531.**

**Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4TH 118.**

**22. Criminal Law § 460 (NCI4th)— jury argument—comment about psychiatrist—permissible inference**

Where a psychiatrist testified that he based his opinion that defendant could not have formed a specific intent to kill on interviews with defendant and defendant's wife and mother and that he did not interview anyone who witnessed the shootings, the prosecutor's jury argument that the psychiatrist "is not interested in the truth" because he did not interview witnesses to the killing was a proper inference based on the psychiatrist's testimony.

**Am Jur 2d, Trial § 632.**

**23. Criminal Law § 433 (NCI4th)— jury argument—reference to defendant as "killer"**

The prosecutor's reference to defendant as a "killer" was not improper where there was no conflict in the evidence that it was defendant who fired into a vehicle and killed the victim.

**Am Jur 2d, Appeal and Error § 896; New Trial § 172; Trial § 1736.**

**Negative characterization or description of defendant, by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial—modern cases. 88 ALR4th 8.**

**24. Criminal Law § 460 (NCI4th)— jury argument—reason psychiatrist hired—inference from evidence**

The prosecutor's jury argument that a psychiatrist admitted that "he was hired for the sole purpose to form this intoxication

defense" was not improper even though the psychiatrist did not so testify where it was evident that this was the reason he was employed.

**Am Jur 2d, Trial § 632.**

25. **Criminal Law § 1312 (NCI4th)— first-degree murder— aggravating circumstance—prior convictions—testimony by prior victims**

The trial court did not abuse its discretion during the penalty phase of a first-degree murder trial by permitting the State, as a part of its proof of the aggravating circumstance that defendant had previously been convicted of three felonies involving violence against the person, to introduce extensive testimony by defendant's three prior victims describing the circumstances of defendant's prior violent felonies, especially since defendant was able to elicit testimony during cross-examination of the witnesses tending to temper the evidence of defendant's prior convictions. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Evidence § 328.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant. 96 ALR2d 768.**

26. **Criminal Law § 1054 (NCI4th)— capital trial—sentencing hearing—denial of continuance—no due process violation**

Defendant's due process rights were not violated by the trial court's denial of defendant's motion for a one-week continuance of the sentencing hearing in a capital trial on the ground that he was surprised by and unprepared for the live testimony of the victims of defendant's three prior violent felonies where the trial court offered a one-day continuance; defendant was informed prior to the commencement of jury selection and two weeks prior to the motion that the State intended to call defendant's prior victims as witnesses; defense counsel contended that a one-week

continuance was necessary to allow them to review the transcripts of defendant's prior convictions, but defendant entered guilty pleas to lesser charges in each of the prior cases and only the transcripts of his guilty pleas were available; those transcripts, along with copies of the indictments, judgments and commitments from those cases, were furnished to defendant by the State a month prior to jury selection; and the record does not reveal with any specificity how defendant believed he would be prejudiced if his motion was denied.

**Am Jur 2d, Criminal Law §§ 527 et seq., 599, 628.**

**27. Criminal Law § 1314 (NCI4th)— capital trial—expression of regret by defendant—hearsay—mitigating circumstance—exclusion as harmless error**

Hearsay testimony that defendant told a witness that he was sorry for what he had done should have been admitted as relevant mitigating evidence in the sentencing phase of defendant's capital trial. When evidence is relevant to a critical issue in the penalty phase of a capital trial, it must be admitted notwithstanding evidentiary rules to the contrary under state law. However, the exclusion of this testimony was harmless beyond a reasonable doubt in light of other evidence before the jury suggesting remorse by defendant and the facts and circumstances of the case as a whole.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

**28. Criminal Law § 876 (NCI4th)— capital trial—sentencing phase—failure of jury to agree—propriety of additional instructions**

The trial court did not coerce a unanimous sentencing verdict in a capital trial by instructing the jury in accordance with N.C.G.S. § 15A-1235(b) when the jury returned to the courtroom without having reached a unanimous verdict where the court's instructions were not given in response to an inquiry by the jury regarding the effect of its failure to reach unanimity, the court urged the jury to attempt to reach a unanimous decision without doing violence to each juror's individual judgment, and the court cautioned the jurors not to surrender their honest convictions

solely because of the opinions of their fellow jurors or merely for the purpose of returning a unanimous decision.

**Am Jur 2d, Trial §§ 1580 et seq.**

**29. Criminal Law § 1322 (NCI4th)— life imprisonment—irrelevancy of possibility of parole—instruction proper**

The trial court properly gave the jury the instruction approved in *State v. Robbins*, 319 N.C. 365, in response to a question from the jury regarding the length of a life sentence.

**Am Jur 2d, Trial §§ 286, 1443.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**30. Criminal Law § 1355 (NCI4th)— first-degree murder—sentencing—mitigating circumstances—failure to submit no significant history of crime**

The trial court did not err during the sentencing phase of a first-degree murder trial by refusing to submit the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where the evidence showed that defendant had three prior felony convictions which involved the use or threatened use of violence to the person of another, and the jury found as an aggravating circumstance that defendant had been previously convicted of a felony involving violence to the person. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

**31. Criminal Law 1348 (NCI4th)— capital sentencing proceeding—mitigating circumstances—refusal to instruct on sympathy**

The trial court properly refused to instruct the jury in a capital sentencing proceeding that it was entitled to base its recommendation on any sympathy or mercy the jury might have for the defendant that arises from the evidence presented in this case.

**Am Jur 2d, Trial § 1457.**

**Instructions to jury: sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

**32. Criminal Law § 455 (NCI4th)— capital sentencing proceeding—jury arguments about death penalty—no impropriety**

The prosecutor's jury argument during a capital sentencing proceeding that the only way the jury could prevent the defendant from killing again was to return a recommendation that he be sentenced to death was not improper. Furthermore, the prosecutor's arguments that there had never been a more appropriate case for the death penalty and that the defendant had worked for and earned a sentence of death were reasonable arguments in light of the evidence of defendant's history of violent and deadly crimes and the circumstances of the murder for which he was being tried.

**Am Jur 2d, Criminal Law § 804.**

**Propriety, under Federal Constitution, of evidence or argument concerning deterrent effect of death penalty. 78 ALR Fed. 553.**

**33. Criminal Law § 454 (NCI4th)— capital sentencing proceeding—jury argument—defendant's belief in death penalty**

The prosecutor's jury argument that defendant proved that he "believed in the death penalty" was a reasonable inference from evidence of defendant's unprovoked, shotgun killing of an unarmed man.

**Am Jur 2d, Criminal Law § 804.**

**Propriety, under Federal Constitution, of evidence or argument concerning deterrent effect of death penalty. 78 ALR Fed. 553.**

**34. Criminal Law § 452 (NCI4th)— capital sentencing proceeding—mitigating circumstances—jury argument about honorable discharge**

It was not improper for the prosecutor to argue that defendant's honorable discharge from the military was not a circumstance which mitigated against imposition of the death penalty or to use Lee Harvey Oswald as an example of a person who also received an honorable discharge.

**Am Jur 2d, Criminal Law § 599.**

**35. Criminal Law § 433 (NCI4th)— capital sentencing proceeding—jury argument—moral equivalent of "back shooter"**

Although defendant did not shoot the victim in the back, the prosecutor could properly argue that one who, without provocation, shoots an unarmed man is the moral equivalent of a "back shooter."

**Am Jur 2d, Trial § 572.**

**36. Criminal Law § 438 (NCI4th)— capital sentencing proceeding—jury argument—reason defendant once testified for State**

The prosecutor's jury argument that the only reason the defendant had once testified for the State was to "save his own skin" was supported by evidence that in 1977 the State agreed to accept defendant's plea of guilty to common law robbery in exchange for his truthful testimony against his co-defendant.

**Am Jur 2d, Trial § 572.**

**37. Criminal Law § 436 (NCI4th)— capital sentencing proceeding—jury argument—lack of remorse by defendant**

The prosecutor's jury argument that defendant had shown no remorse for killing the victim was supported by the evidence and not otherwise improper even though defendant did not testify.

**Am Jur 2d, Trial § 572.**

**38. Criminal Law § 454 (NCI4th)— capital sentencing proceeding—jury arguments—jury as conscience of community—defendant "gave himself the death penalty"**

The prosecutor's jury argument in a capital sentencing proceeding urging the jury to act as the voice and conscience of the community was not improper. Furthermore, the prosecutor's argument that defendant "put himself in this position" and "gave himself the death penalty" did not impermissibly diminish the jury's sense of responsibility for recommending a sentence, and any impropriety in this argument was harmless.

**Am Jur 2d, Trial § 572.**

**39. Criminal Law § 413 (NCI4th)— capital sentencing proceeding—no right to opening and closing arguments**

The trial court did not err in denying defense counsel's request to make both the opening and closing arguments in a cap-

ital sentencing proceeding since N.C.G.S. § 15A-2000(a)(4) gives a capital defendant the right to make only the final argument in the penalty phase.

**Am Jur 2d, Trial §§ 539, 572.**

**40. Criminal Law § 680 (NCI4th)— capital sentencing—nonstatutory mitigating circumstances—refusal to give peremptory instruction—harmless error**

Although the trial court erred by refusing to give a requested peremptory instruction on sixteen nonstatutory mitigating circumstances where the evidence supporting those circumstances was uncontroverted and not inherently incredible, this error was harmless beyond a reasonable doubt where the jury found six of those mitigating circumstances that it believed had mitigating value; the record shows that the jury rejected the mitigating circumstances not found because they determined that those circumstances had no mitigating value, not because they rejected the factual basis for those circumstances; and it would thus have been of no consequence if the court had given a correct charge.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1441, 1444.**

**41. Criminal Law § 1348 (NCI4th)— capital case—instructions defining mitigating circumstances**

The trial court did not err during a capital sentencing proceeding by giving the jury an instruction defining "mitigating circumstance" which had been approved by prior N.C. Supreme Court decisions. Moreover, defendant waived any error by the court in also reading a dictionary definition of "mitigate" to the jury when defense counsel assented to allowing the jury to use a dictionary during its deliberations.

**Am Jur 2d, Trial §§ 1444, 1446.**

**42. Criminal Law § 1337 (NCI4th)— capital trial—aggravating circumstance—conviction of felony involving violence—peremptory instruction on robbery**

Where the State introduced the record of defendant's conviction of common law robbery as proof of the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance in a capital trial, the trial court properly instructed the jury that robbery is a felony which by definition involves the use or threatened use of violence.

Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1446, 1447.

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

43. **Criminal Law § 1325 (NCI4th)— capital trial—mitigating circumstances—pattern instructions—compliance with *McKoy* decision**

The pattern capital sentencing instructions given by the trial court, which were adopted as a result of the decision in *McKoy v. North Carolina*, 494 U.S. 433, did not allow jurors to disregard properly found mitigating circumstances by instructing in Issue Three, the weighing issue, and Issue Four, the substantiality issue, that each juror may consider any mitigating circumstance or circumstances that the juror determines to exist by a preponderance of the evidence. *McKoy* does not require a juror to consider, at Issue Three and Issue Four, those mitigating circumstances which he or she did not find but which were found by one or more other jurors.

Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1446, 1447.

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

44. **Criminal Law § 1242 (NCI4th)— extenuating relationship mitigating factor—insufficient evidence to require finding**

In sentencing defendant for aggravated assault and discharging a firearm into occupied property, the trial court was not required to find and consider the statutory mitigating factor that the relationship between defendant and the victim was extenuating where the only evidence which tended to show the existence of this mitigating factor was based on the self-serving statements of the defendant. N.C.G.S. § 15A-1340.4(a)(2)i.

Am Jur 2d, Criminal Law § 599.

45. **Criminal Law § 1325 (NCI4th)— capital trial—aggravating circumstance—convictions of felonies involving violence— sufficient evidence**

The jury's finding of the aggravating circumstance in a capital trial that defendant had previously been convicted of a felony

involving the use or threatened use of violence to the person was supported by evidence that defendant had previously been convicted of common law robbery and two counts of assault with a deadly weapon inflicting serious injury. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Criminal Law §§ 598 et seq.; Evidence § 328.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**46. Criminal Law § 1346 (NCI4th)— capital trial—aggravating circumstance—creating risk of death to more than one person—sufficient evidence**

The jury's finding of the aggravating circumstance in a capital trial that defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person was supported by evidence that defendant, from a distance of only ten feet, fired a twelve gauge shotgun into the rear seat of the vehicle occupied by the victim and three other persons; the gun was loaded with a three-inch, double aught shotgun shell; and the blast immediately killed the victim and injured another passenger. N.C.G.S. § 15A-2000(e)(10).

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-*Gregg* cases. 64 ALR4th 837.**

**47. Criminal Law § 1373 (NCI4th)— first-degree murder— death penalty not disproportionate**

A sentence of death imposed on defendant for first-degree murder of his son was not disproportionate to the penalty imposed in similar cases considering the crime and the defendant where the evidence tended to show that defendant calmly and deliberately searched for his son, that when he encountered his

son walking along the roadway, he stopped his car, removed a shotgun therefrom, and walked toward his unarmed son and his companions, and that as the son pleaded for his life, defendant calmly approached the car which the son had entered and fired through the car's rear door, fatally wounding the son and injuring one of the children seated in the car with him; the jury found that the murder was premeditated and deliberate; the jury found as aggravating circumstances that defendant had previously been convicted of a felony involving the use or threatened use of violence and that he knowingly created a great risk of death to more than one person; the evidence showed that defendant had previously been convicted of three violent felonies involving the use of deadly force against unsuspecting and innocent victims and that two of those victims were seriously injured and maimed; defendant showed no remorse for the death of his son or for the injuries he inflicted on the child; defendant acted with total disregard for the lives of all the persons seated in the back seat of the car and was not dissuaded from action by the presence of small, innocent children; and defendant exhibited a complete absence of compassion for his son, as well as for the small children who sat beside him, as the son begged for defendant to spare his life.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

Justice PARKER did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Strickland, J., at the 30 July 1990 Criminal Session of Superior Court, Jones County, upon a verdict of guilty of first degree murder. The defendant's motion to bypass the Court of Appeals as to his convictions of assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into occupied property was allowed by this Court on 19 October 1992. Heard in the Supreme Court 3 November 1992.

The State's evidence tended to show that the murder victim in this case was the defendant's son, Charles Meadows. On 23 September 1989, Meadows, Joyce Hill, Nancy Hill, and Nancy Hill's young

child, were walking down rural route 1100, toward Great Lake Road. As the group neared the intersection of route 1100 and Great Lake Road, they observed Queen Jones' car at the intersection. In Jones' car were Jones, her mother Rena, her sister Christine, and her two children, Marrissa and Thomas. Jones and her mother were in the front seat and her sister and two children were in the back seat.

Jones was looking for Joyce Hill to ask her if she would baby-sit Jones' sister and children. As the Meadows group neared Jones' car, Jones' sister and children began exiting the car. At that time, Nancy Hill observed the defendant driving his car along route 1100. The defendant passed through the intersection, turned his car around, and stopped near the side of the road. The defendant stepped out of his car, reached into the back seat, and removed a shotgun. Upon observing the gun, Meadows and Jones' children and sister, who were all standing outside of Jones' car, entered the back seat of the car.

The defendant then began to approach the car carrying the gun. As he approached, he opened the gun, loaded a shell into the chamber and closed the gun. The victim began making a pleading motion to the defendant not to shoot and Joyce Hill begged him not to shoot. The defendant proceeded toward the side of the car where the victim was sitting. When he reached the car he stopped, cocked the gun, and fired through the door of the car. The defendant then opened the chamber, removed the empty shell, reloaded the gun, walked back to his car, and drove away.

The shotgun blast inflicted a gaping wound in the victim's chest which caused immediate death. Marrissa Jones, who was seated beside the victim, was struck by numerous buckshot pellets in the cheek and forehead. Shortly thereafter, a search for the defendant and his car was begun.

The defendant's car was located approximately three miles from the scene of the shooting. The car was in a ditch on the side of the road. There were skid marks leading from the road to the car. A short distance from the car, approximately fifty feet along a footpath, police discovered the defendant's shotgun. The defendant was arrested shortly thereafter.

On 25 June 1990, the Jones County Grand Jury returned true bills of indictment charging the defendant with first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a firearm into an occupied vehicle. A capital

**STATE v. JONES**

[339 N.C. 114 (1994)]

trial was commenced on 30 July 1990. The defendant was convicted of all charges. The first degree murder conviction was based on theories of premeditation and deliberation and felony murder.

The State's evidence during the sentencing phase tended to show, and the jury found, that the defendant had been previously convicted of a felony involving the use or threatened use of violence to the person, N.C.G.S. § 15A-2000(e)(3), and that he knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to more than one person. N.C.G.S. § 15A-2000(e)(10) (1988).

The defendant's penalty phase evidence tended to show, and the jury found that, at the time of the murder the defendant was under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(1), he was in need of treatment for alcoholism and emotional disturbance, he had worked his entire adult life and provided for his family, and he had done various good deeds for his community and its citizens.

The jury found that the mitigating circumstances did not outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to warrant imposition of the death penalty. Thus, the jury returned a recommendation of death and the trial court sentenced the defendant to death in accordance with that recommendation. The defendant was sentenced, in addition, to twenty years imprisonment for the assault, and ten years imprisonment for discharging a firearm into occupied property. The defendant appeals.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

The defendant brings forth numerous assignments of error relating to each facet of his capital trial and sentencing proceeding. For the reasons set forth herein, we find the defendant's trial and sentencing proceeding to have been free from prejudicial error.

By his first assignments of error, the defendant contends that the trial court erred by unduly restricting his *voir dire* of prospective jurors, thereby preventing him from making effective use of his peremptory challenges and violating his constitutional rights. The defendant says that the subjects he was prevented from addressing during *voir dire* included the "defendant's use of alcohol at the time of the offense, general views about capital punishment, the appropriateness of the death penalty in tragic cases, whether the judicial system was soft on crime, and the importance of mitigating evidence to a capital sentencing decision."

It is well established that while counsel is allowed wide latitude in examining jurors on *voir dire*, the form of counsel's questions is within the sound discretion of the trial court. *State v. Parks*, 324 N.C. 420, 378 S.E.2d 785 (1989). Likewise, the manner and extent of trial counsel's inquiries rest largely in the discretion of the trial judge. *State v. Bryant*, 282 N.C. 92, 191 S.E.2d 745 (1972), *cert. denied*, 410 U.S. 958, 35 L. Ed. 2d 691, *cert. denied*, 410 U.S. 987, 36 L. Ed. 2d 184 (1973).

Counsel may not pose hypothetical questions which are designed to elicit from prospective jurors what their decision might be under a given state of facts. Such questions are improper because they tend to "stake out" a juror and cause him to pledge himself to a decision in advance of the evidence to be presented. *State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *sentence vacated*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976). In order for the defendant to show reversible error, he must show that the trial court abused its discretion and that he was prejudiced thereby. *State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985). We will address *seriatim* the defendant's proffered inquiries which the trial court ruled improper.

[1] First, the court prevented the defendant from asking prospective jurors whether they felt that the legal system may be too soft on criminals. This Court, in *State v. Hopper*, 292 N.C. 580, 234 S.E.2d 580 (1977), considered the propriety of a similar question. In *Hopper*, defense counsel attempted to ask a prospective juror "what is your opinion of our court system in North Carolina today, do you think that justice is done?" *Hopper*, 292 N.C. at 588, 234 S.E.2d at 584. This Court found defense counsel's question to be clearly improper. Thus, we find no error in the trial court's ruling in this case.

[2] Second, defendant says that he should have been allowed to ask prospective jurors how they would vote under certain given circum-

**STATE v. JONES**

[339 N.C. 114 (1994)]

stances. The trial court did not allow the defendant to ask jurors how their decision would be affected if it was shown that many people in the defendant's community thought highly of him; how they would vote if they thought the defendant was probably guilty of first degree murder but had not been convinced beyond a reasonable doubt; how they would react if, during deliberations, they were the only juror on a particular side of an issue, or; whether they would consider life imprisonment a severe enough penalty even though a young girl was injured.

These questions were intended to elicit from the jurors how they would vote under a particular set of given facts. Such questions tend to cause jurors to pledge themselves to a decision in advance of the evidence to be presented and are therefore improper. The trial court's rulings were proper. *State v. Vinson; State v. Bracey*, 303 N.C. 112, 277 S.E.2d 390 (1981).

[3] Nor did the trial court err by preventing the defendant from questioning jurors about their understanding of the meaning of a life sentence. This Court has repeatedly held that because the subject of parole eligibility is irrelevant to the issues to be determined during sentencing, it should not be injected during the jury selection process. *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909 (1989), *sentence vacated*, 494 U.S. 1050, 108 L. Ed. 2d 756, *on remand*, 326 N.C. 593, 391 S.E.2d 816, *on remand*, 327 N.C. 388, 395 S.E.2d 106 (1990), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987); *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569, *cert. denied*, 459 U.S. 1080, 74 L. Ed. 2d 642 (1982).

[4] Next, the defendant complains that he was not allowed to ask jurors whether they believed "that every person convicted of murder, premeditated or intentional murder should be put to death." A trial court commits reversible error if it denies a capital defendant the opportunity to ask prospective jurors whether they would automatically vote to impose the death penalty if the defendant is found guilty of the capital offense. *Morgan v. Illinois*, —— U.S. ——, 119 L. Ed. 2d 492 (1992).

The defendant in this case was not prevented from making this inquiry. The record shows that immediately after sustaining the State's objection to the preceding question, the trial judge specifically stated that he would allow the defendant to ask prospective jurors whether their "support for the death penalty [was] so strong that

STATE v. JONES

[339 N.C. 114 (1994)]

[they] would find it difficult or impossible to vote for life in prison for a person convicted of murder?" This question, although phrased in different terms, allowed the defendant to determine whether the prospective jurors would automatically sentence the defendant to death upon his conviction for murder. We find no error in the trial court's control of this portion of *voir dire*.

[5] The defendant also assigns error to the trial court's refusal to allow him to ask jurors how they felt about the concept of considering mitigating circumstances in determining an appropriate sentence. The trial court ruled this question improper on the ground that it was too broad. We cannot say that this ruling constituted an abuse of the trial court's discretion to control the manner and extent of jury selection.

[6] Next, the defendant says that he should have been allowed to ask prospective jurors whether they had read anything which made them think that the defendant should receive some sentence other than the death penalty. The record, however, shows that the defendant was allowed to question jurors about their exposure to pretrial publicity and whether they had formed any opinions about the case as a result thereof. Considering this record, the defendant has failed to show an abuse of discretion by the trial court.

[7] The defendant next contends that the trial court erred by refusing to allow him to ask prospective jurors a series of questions relating to their views of mental illness as a mitigating circumstance. Having reviewed these proposed questions, we find that they were hypothetical in nature and that they could properly be viewed by the trial court as impermissible attempts to indoctrinate the prospective jurors regarding the existence of a mitigating circumstance. *State v. Davis*, 325 N.C. 607, 386 S.E.2d 418 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990); *State v. Parks*, 324 N.C. 420, 378 S.E.2d 785 (1989). Defendant has not shown an abuse of discretion.

[8] The defendant next says that the trial court erred by preventing him from asking prospective jurors whether they believed that alcoholism is a disease or an illness. The State's objection to this question was properly sustained. The purpose of *voir dire* is to ferret out jurors with latent prejudices and to assure the parties' right to an impartial jury. Whether the jurors believed that alcoholism is a disease or an illness would not reveal a reasonable basis for the exercise of a peremptory challenge. In addition, the record shows that the trial court allowed the defendant to ask jurors whether they had ever

thought about, seen, or talked to alcoholics. Thus, the defendant was not foreclosed from ascertaining juror beliefs about alcoholism. We hold that the defendant has failed to show an abuse of discretion. *See State v. Leroux*, 326 N.C. 368, 390 S.E.2d 314, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990).

**[9]** The defendant next says that he was improperly prevented from asking potential jurors if they understood that if they could not reach a unanimous verdict, the court would automatically impose a life sentence. This Court has long held that it is improper for a trial court to inform the jury of the effect of its failure to reach a unanimous verdict. Such an instruction is improper because it permits the jury to escape its responsibility to recommend the sentence to be imposed. *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981); *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979). Because the question proposed by the defendant would have a similar effect as an instruction by the court, we find no error in the trial court's ruling.

**[10]** The defendant also assigns error to the court's refusal to allow him to ask juror number one, Mr. Register, the following questions:

So you're telling me that perhaps Mr. Jones may be intoxicated at the time that this shooting took place, that you would not be able to consider that as a mitigating factor under any circumstances, is that correct?

Mr. Register, would you hold Mr. Jones to a higher burden of proof of proving that he was intoxicated than would normally be required by law in that specific instance?

Mr. Register, you would have a difficult time in finding Mr. Jones was voluntarily intoxicated would you not so that you would not have a specific intent, is that correct?

Mr. Register, you would have a difficult time in rendering a verdict in accordance with the law in that specific case, is that correct?

Where an objection to a question is sustained but the same or a substantially similar question is subsequently allowed, any error in the prior ruling is rendered harmless beyond a reasonable doubt. The record reveals that the defendant was permitted to ask Mr. Register numerous questions concerning his ability to consider the defendant's intoxication as it related to the relevant issues in the guilt/innocence and penalty phases of his trial. Therefore, even if we

assume that the defendant's proffered questions were proper, any errors in the trial court's rulings were harmless beyond a reasonable doubt.

[11] The defendant next says that he should have been allowed to ask the jurors whether they had any problem with "the law" that "with nothing else appearing the punishment for first degree murder is life in prison." This question was improper because it constituted an incomplete and ambiguous description of this State's capital sentencing scheme. N.C.G.S. § 15A-2000 (1988). Even if this was a proper question, which it was not, the defendant was not prejudiced by the court's ruling. The trial court expressly allowed the defendant to ask a subsequent question which more fully and accurately explained the issues to be determined during a capital sentencing proceeding. The defendant has not shown an abuse of discretion.

[12] The defendant also assigns error to the trial court's refusal to allow him to ask prospective jurors whether they believed the death penalty should be imposed because it is less expensive than keeping a person imprisoned for life; whether they could impose a life sentence for "a terrible, tragic crime;" how they felt "about a person who could do such a thing," and whether they believed that all persons convicted of first degree murder should be treated equally. The defendant does not say why it was error for the trial court to rule these questions improper. Moreover, even if we assume these were proper questions, the defendant does not suggest and we cannot discern how he was prejudiced by the trial court's rulings. We hold that the jury selection proceedings were free from prejudicial error.

[13] The defendant next assigns as error the trial court's denial of his motion for funds to hire an investigator to aid in the preparation of his defense. In addressing this question in previous cases, we have held that before an indigent criminal defendant is entitled to have the State pay for an expert, the defendant must make a threshold showing of a particularized need for the requested expert. *State v. Mills*, 332 N.C. 392, 420 S.E.2d 114 (1992); *State v. Parks*, 331 N.C. 649, 417 S.E.2d 467 (1992); *State v. Moore*, 321 N.C. 327, 364 S.E.2d 648 (1988); *State v. Watson*, 310 N.C. 384, 312 S.E.2d 448 (1984).

In order to make this threshold showing, the defendant must establish that the aid of the expert is "likely to be a significant factor" at trial. *Moore*, 321 N.C at 344, 364 S.E.2d at 657 (*quoting Ake v. Oklahoma*, 470 U.S. 68, 82, 84 L. Ed. 2d 53, 60 (1985)). The expert's assistance constitutes a significant factor if it would materially aid

the preparation of the defendant's defense, or the denial of assistance would deny the defendant a fair trial. *Parks*, 331 N.C. at 658, 417 S.E.2d at 472.

In support of the defendant's motion, defense counsel informed the court that the defendant had supplied them with the names of several people, located throughout eastern North Carolina, with whom the defendant had been associated in various ways. Defense counsel stated that his efforts to locate or contact these persons had been unsuccessful. Counsel intended to call these persons as witnesses if the defendant's trial progressed to the sentencing phase.

However, the defendant failed to enunciate how these witnesses would significantly aid his defense. No showing was made as to how the defendant would be prejudiced if these witnesses were not located. The defendant did not suggest that these were the only witnesses who could provide this sort of evidence, or that he would be denied a fair trial if an investigator was not appointed to locate and interview these witnesses. In short, defendant made no particularized showing of need. Rather, the defendant merely asserted in general terms that there were certain persons with whom the defendant had been associated and whom he anticipated calling as witnesses if the trial progressed to the sentencing phase.

Defense counsel also contended that there were eyewitnesses to the killing that he had not interviewed whom he wished to have interviewed by an investigator. Counsel intimated that it was necessary to have these witnesses interviewed by an investigator to insure their credibility. Counsel further suggested that an investigator was necessary to conduct these interviews because it would be "quite difficult" for defense counsel to do so in light of the rapidly approaching trial.

We are not persuaded that this was a sufficient showing. As the defendant states in his brief, an undeveloped assertion that defense counsel does not have adequate time to investigate is insufficient. *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988). Furthermore, the record reveals that defense counsel was aware of the insufficiency of their preliminary showing and that they were allowed ample opportunities to make the requisite showing.

The court repeatedly urged defense counsel to make a particularized showing of need rather than bare assertions. Despite these repeated warnings, no showing was made of how an investigator would be of material assistance. The inadequacy of the defendant's

showing was also apparent to defense counsel. When the judge inti-
mated that he would deny the defendant's motion, defense counsel
stated,

> we have requested written data concerning the defendant and
> what comes back in, *we don't know whether we will need a
> private investigator or not.* If we have, based on what we find
> out from that data, *if we have a particularized need* for a private
> investigator, would it be possible to come back to you?
> (Emphasis added.)

We hold that the defendant's showing amounted to no more than
a mere hope or suspicion that favorable evidence might be uncovered
if the motion was granted. *State v. Holden,* 321 N.C. 125, 362 S.E.2d
513 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988), *post-
conviction relief granted,* 338 N.C. 394, 450 S.E.2d 878 (1994). This
assignment of error is overruled.

By his next assignment of error, the defendant contends that the
trial court erred by allowing the prosecution to exercise its perempt-
ory challenges against black jurors on the basis of their race. *Batson
v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69 (1986); *Powers v. Ohio,* 499
U.S. 400, 113 L. Ed. 2d 411 (1991). In *Batson,* the Supreme Court held
that where a defendant establishes a *prima facie* case of discrimina-
tory use of peremptory challenges, the State must rebut the defend-
ant's *prima facie* case with neutral and reasonably specific reasons
for the exercise of the peremptory challenges. *Batson,* 476 U.S. at 98,
90 L. Ed. 2d at 88.

To rebut a defendant's *prima facie* case, the State need not estab-
lish reasons rising to the level of a challenge for cause. *Batson,* 476
U.S. at 97, 90 L. Ed. 2d at 88. The State may rebut the defendant's case
by showing that the peremptory challenge was exercised on the basis
of "legitimate 'hunches' and past experience[,]" so long as there was
an absence of racially discriminatory motive. *State v. Porter,* 326 N.C.
489, 498, 391 S.E.2d 144, 151 (1990) (*quoting State v. Antwine,* 743
S.W.2d 51, 65 (Mo. 1987) (en banc), *cert. denied,* 486 U.S. 1017, 100
L. Ed. 2d 217 (1988), *post-conviction relief denied,* 791 S.W.2d 403
(Mo. 1990), *cert. denied,* 498 U.S. 1055, 112 L. Ed. 2d 789 (1991)). The
trial court's findings regarding the sufficiency of the State's rebuttal
are given great deference on appeal. *Robinson,* 330 N.C. 1, 19, 409
S.E.2d 288, 297 (1991).

In this case, fifty-four jurors were examined during *voir dire.*
Twenty-two of these jurors were black. Following challenges for

cause, only nine black jurors remained. Five of the remaining black jurors were peremptorily challenged by the State. On each occasion that the State sought to peremptorily challenge a black juror, the trial court excused all jurors from the courtroom and called a bench conference. During each bench conference, defense counsel sought to establish a *prima facie* case of discrimination, and the State sought to enunciate race-neutral and specific reasons for the exercise of the peremptory challenge. The trial court found that the State exercised its peremptory challenges against black jurors for neutral, nonpretextual, and specific reasons.

Because the State proffered explanations for its exercise of peremptory challenges, we find it unnecessary to determine whether the defendant successfully established a *prima facie* case of discrimination. *State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288. Thus, we proceed on the assumption that a *prima facie* case was established.

The prosecutor peremptorily removed juror Daniels for three reasons. Mr. Daniels had attended school with the defendant, he was acquainted with several witnesses for the defense, and he stated that he would be uncomfortable sitting as a juror in the case.

Juror Hargett was peremptorily challenged on the ground that she knew of the defendant and was acquainted with several of the defendant's witnesses. In addition, the juror stated that defense counsel had performed legal services for the juror's mother. Finally, the juror revealed that she had a relative who had been charged with murder.

The State exercised a peremptory challenge against juror Kinsey because she was acquainted with at least one defense witness and she had been represented by defense counsel on two separate occasions. The prosecutor also stated that he had been informed by one of the State's witnesses, a black S.B.I. agent, that juror Kinsey had given the agent the impression that she disliked the agent.

Juror Norman was peremptorily challenged because he failed to reveal during initial questioning that his aunt and his brother would be witnesses for the defense and that he knew two other defense witnesses.

Finally, the prosecutor's reasons for challenging juror Dove were his equivocation on his ability to consider imposing the death penalty in any case and the fact that he had been charged within the last several years with assault inflicting serious injury.

The defendant suggests that the prosecutor's reasons for his challenges against jurors Daniels and Kinsey were pretextual. With regard to juror Daniels, the defendant says that: the juror knew only three of more than fifty potential defense witnesses; the importance of two of these witnesses was minor; one of these witnesses became a prosecution witness; and one of these witnesses was known by white jurors who were not challenged peremptorily.

Regarding juror Kinsey, the defendant says that the prosecutor again relied on her acquaintance with minor witnesses. The defendant says that Kinsey's apparent dislike of a prosecution witness should not be considered a legitimate reason for her excusal.

We believe that defendant has overlooked the most convincing reasons for excusal of these jurors. Juror Daniels attended school with the defendant himself and juror Kinsey had been represented by defense counsel on more than one occasion. We believe these are race-neutral, specific, and non-pretextual reasons for peremptorily challenging any juror.

Likewise, we believe that the prosecutor's stated reasons for peremptorily challenging the remaining jurors were legitimate. The defendant does not suggest, and we cannot perceive, how these reasons were pretextual. Given the great deference which must be afforded the trial court's finding that the prosecutor's peremptory challenges were based on race-neutral and specific grounds, we overrule this assignment of error.

[15] Under his next assignment of error, the defendant argues that the trial court erred by refusing to give his requested preliminary instruction explaining the specific procedures of a capital case. The defendant says that the requested instruction was supported by applicable legal authorities and that therefore it was error to instruct the jury according to the applicable pattern jury instruction. The defendant contends that the pattern preliminary instruction denied him the opportunity to select a fair and impartial jury.

The defendant concedes that this Court has previously rejected similar claims. *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989), *sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604, *on remand*, 327 N.C. 470, 397 S.E.2d 223 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991); *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990). However, the defendant argues that this case is different. The defendant says that in the prior cases the jurors were tediously educated about this

**STATE v. JONES**

[339 N.C. 114 (1994)]

state's capital sentencing procedure through the prosecutor's thorough *voir dire*, whereas in this case, neither the trial court nor the prosecutor gave a detailed explanation of the nature of a capital trial. We disagree.

The defendant's characterization of the prosecutor's *voir dire* in *Artis* is inaccurate. Rather than tediously educating the jury about this state's capital sentencing procedure, the prosecutor, in more than one instance, misstated the law. On appeal in that case, the defendant argued that these misstatements made his proffered instructions critical to his ability to select a fair and impartial jury. Despite the inaccuracy of the prosecutor's description of a capital sentencing proceeding, we found no error in the trial court's refusal to give the defendant's proffered instruction. Thus, what distinguishes this case from *Artis* is that the jury in this case did not receive misinformation regarding the nature of a capital sentencing proceeding.

We find no abuse of discretion by the trial court in refusing to give the defendant's requested preliminary instruction. By utilizing the pattern instruction, a trial court accurately and sufficiently explains the bifurcated nature of a capital trial, avoids potential prejudice to the defendant, and helps to insure the uniformity of jury instructions for all trials. *Artis*, 325 N.C. at 295, 384 S.E.2d at 479. This assignment of error is overruled.

**[16]** By his next assignment of error, the defendant contends that prospective juror Powell was erroneously excused for cause. The defendant says that the juror's excusal violated *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985), because she never indicated a frank inability to follow the law. The defendant argues that in order to sufficiently establish the juror's inability to follow the law, it was necessary that she be examined by either the defendant or the trial court. We disagree.

Jurors may properly be excused for cause in a capital case if the juror's views concerning the death penalty would prevent or substantially impair their ability to perform their duties in accordance with the trial court's instructions and their oaths. *Wainwright v. Witt*, 469 U.S. at 424, 83 L. Ed. 2d at 851-52; *see also Adams v. Texas*, 448 U.S. 38, 65 L. Ed. 2d 581 (1980). In *Witt*, the Court noted that the *Adams* standard for excusing a juror for cause "does not require that a juror's bias be proved with 'unmistakable clarity' " and that "determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism." *Witt*, 469 U.S. at

424, 83 L. Ed. 2d at 852. Moreover, a trial judge's decision to excuse a juror under this standard is entitled to deference because "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Id.* at 425-26, 83 L. Ed. 2d at 852.

The following exchange occurred between the prosecutor and juror Powell (juror #12).

MR. ANDREWS: Well, do you want me to rephrase the question? You're saying that you would automatically vote against the death penalty, is that right?

JUROR #12: Yes, because I don't believe in it.

MR. ANDREWS: So you're saying that you would never vote for the death penalty in any case regardless of what the evidence were, is that right, ma'am?

JUROR #12: I don't think so.

MR. ANDREWS: . . . So you're saying that you would then automatically vote against the death penalty regardless of what the evidence was, is that correct, ma'am?

JUROR #12: The way I feel right now I would.

MR. ANDREWS: Yes. And you would not be able to vote in favor of the death penalty under any circumstance, is that right, ma'am?

JUROR #12: Right.

Juror Powell's answers may well have left the trial judge with the definite impression that she would be unable to faithfully and impartially apply the law. Given the deference that is due a trial judge's decision to excuse a juror, we are unable to say that the trial court committed error by allowing the State's challenge for cause. Likewise, the trial court's failure to attempt to rehabilitate the juror or to allow the defendant to do so was not error. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991); *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990). This assignment of error is overruled.

[17] By his next assignment of error, the defendant contends that the trial court erred by instructing the jury that it could not consider as substantive evidence the information relied upon by the defendant's expert as the basis for the expert's opinion. Dr. Brown offered his expert opinion that at the time of the killing the defendant was so

STATE v. JONES

[339 N.C. 114 (1994)]

intoxicated that he was incapable of premeditation or deliberation. In forming this opinion, the doctor relied on the statements of the defendant, his mother, and his wife. The defendant says that these statements were made for the purpose of medical diagnosis and therefore were admissible under N.C.G.S. § 8C-1, Rule 803(4).

Rule 803(4) excepts from the general prohibition against hearsay:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The rationale for this exception is a matter of common sense. As the Advisory Committee's Note to Rule 803(4) explains in part,

Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment in view of the patient's *strong motivation to be truthful*. . . . The same guarantee of trustworthiness extends to statements of past conditions and medical history, made for purposes of diagnosis or treatment. (Emphasis added.)

N.C.G.S. § 8C-1, Rule 803(4) official commentary (1992).

In cases such as the instant case, the rationale for the Rule 803(4) exception to Rule 802 is entirely absent. The defendant was not evaluated by Dr. Brown until July of 1990, some ten months after the killing, and only three weeks prior to trial. It is readily apparent that the defendant was not seeking treatment of a medical condition. Nor was the defendant seeking a diagnosis of his condition for the purpose of obtaining treatment. Rather, the record clearly shows that the defendant's statements to Dr. Brown were made for the purpose of preparing and presenting a defense to the crimes for which he stood accused. *Cf. State v. Stafford*, 317 N.C. 568, 346 S.E.2d 463 (1986) (prosecuting witness' statements to doctor concerning past symptoms not made for purpose of medical diagnosis or treatment but for purpose of presenting State's "rape trauma syndrome" theory at trial that was to commence three days later). A person's motivation to speak truthfully is much greater when he seeks diagnosis or treatment of a medical condition than when he seeks diagnosis in order to prepare a defense to criminal charges. We hold that the defendant's

statements to Dr. Brown were not statements made for the purpose of medical diagnosis or treatment.

[18] Likewise, we hold that the statements of the defendant's mother and wife were inadmissible under Rule 803(4). The text of the rule makes it quite clear that only the statements of the person being diagnosed or treated are excepted from the prohibition against hearsay. We hold that the trial court properly instructed the jury that the statements of the defendant, his mother, and his wife were admissible only to show the basis of the expert's opinion and not as substantive evidence of the matter asserted. *State v. Wade*, 296 N.C. 454, 251 S.E.2d 407 (1979); *State v. Franks*, 300 N.C. 1, 265 S.E.2d 177 (1980). This assignment of error is overruled.

[19] The defendant next assigns as error the trial court's refusal to allow Dr. Brown to state, on redirect examination, if he had an opinion as to whether or not the defendant was lying to him during his evaluation of the defendant. The defendant contends that this testimony was relevant and admissible to show the reliability of the information upon which Dr. Brown based his opinion.

This Court has repeatedly held that N.C.G.S. § 8C-1, Rule 608 and N.C.G.S. § 8C-1, Rule 405(a), when read together, forbid an expert's opinion testimony as to the credibility of a witness. *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986); *State v. Kim*, 318 N.C. 614, 350 S.E.2d 347 (1986); *State v. Heath*, 316 N.C. 337, 341 S.E.2d 565 (1986). However, a witness who renders an expert opinion may also testify as to the reliability of the information upon which he based his opinion. *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987); *State v. Wise*, 326 N.C. 421, 390 S.E.2d 142, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990).

The defendant contends that the instant case is analogous to *Kennedy* and *Wise* because Dr. Brown was asked to assess the credibility of the information on which he based his opinion. The defendant further says that Dr. Brown was not asked to give his opinion as to the truthfulness of a witness because the defendant did not testify. Thus, says the defendant, the question did not violate the rule prohibiting expert testimony concerning the truthfulness of a witness.

We agree that the question would not have elicited Dr. Brown's opinion of a witness' credibility and that it was error for the trial court to rule the question improper. However, the defendant has the burden of showing that had this error not been committed there is a

STATE v. JONES

[339 N.C. 114 (1994)]

reasonable possibility that a different result would have been reached. N.C.G.S. § 15A-1443(a) (1988); *State v. McElrath*, 322 N.C. 1, 366 S.E.2d 442 (1988); *State v. Turner*, 268 N.C. 225, 150 S.E.2d 406 (1966). Based on our review of the evidence that was properly admitted at trial, we conclude that it is inconceivable that the jury's verdict would have been different if Dr. Brown had been allowed to testify that he believed the defendant.

Our review of the record reveals that the only evidence that the defendant was incapable of premeditation and deliberation due to extreme alcohol intoxication consisted of the expert opinion of Dr. Brown. This opinion was based primarily on the statements of the defendant, statements which the doctor conceded may have been self-serving. The doctor also conceded that his opinion was not based on any independent knowledge of the defendant's condition at the time of the crime.

The evidence of the defendant's intoxication at the time of the killing was less than positive. None of the eyewitnesses to the shooting described the defendant as exhibiting any signs of physical or psychological impairment. Rather, these witnesses described the defendant's actions as being calm and deliberate. In addition, the law enforcement officers who observed the defendant after his arrest testified that his physical movements were coordinated and normal, he spoke articulately and without slurring, and he did not have a strong odor of alcohol about his person. Based on their observations of the defendant, these witnesses formed the opinion that the defendant was not intoxicated.

Finally, the testimony of the defense witnesses, while tending to show that the defendant was under the influence of alcohol during the morning of the day in question, failed to establish that the defendant was inebriated at 3:00 in the afternoon, the time of the killing.

We hold, in light of the evidence that was properly admitted, that the defendant has not met his burden of showing that there is a reasonable possibility that a different result would have been reached if the trial court had allowed Dr. Brown to state his opinion of the defendant's credibility. Because the defendant was not prejudiced by the trial court's error, we overrule this assignment of error.

[20] The defendant next assigns error to the court's charge as to discharging a firearm into an occupied vehicle. Before charging the jury, the court inquired of counsel "as to whether or not discharging a

weapon into occupied property requires specific intent as to an element of the offense or whether it does not require a specific intent." The defendant's attorney argued that the court should charge on specific intent and the district attorney said the court should not charge on specific intent. The court then ruled that the crime of discharging a firearm into an occupied vehicle was "a general intent rather than a specific intent" crime.

The court charged the jury correctly as to the elements of discharging a firearm into an occupied vehicle and then gave the following charge: "The law does not require any specific intent for the defendant to be guilty of the crime of discharging a firearm into occupied property. Thus, the defendant[']s intoxication can have no bearing upon your determination of his guilt or innocense [sic] of this crime."

The defendant argues that this charge was erroneous because it relieved the State of having to prove the defendant intentionally fired into the vehicle. The defendant also says it was erroneous because it did not allow the jury to consider his intoxication when determining whether he intentionally fired into the vehicle.

In some of our cases, we have made a distinction between crimes which have as an essential element a specific intent that a result be reached, which have been called specific intent crimes, and crimes which only require the doing of some act, which we call general intent crimes. *State v. Keel*, 333 N.C. 52, 423 S.E.2d 458 (1992); *State v. Davis*, 214 N.C. 787, 1 S.E.2d 104 (1939). First degree murder, which has as an essential element the intention to kill, has been called a specific intent crime. Second degree murder, which does not have this element, has been called a general intent crime.

Discharging a firearm into a vehicle does not require that the State prove any specific intent but only that the defendant perform the act which is forbidden by statute. It is a general intent crime. *State v. Wheeler*, 321 N.C. 725, 365 S.E.2d 609 (1988). In *State v. Baldwin*, 330 N.C. 446, 412 S.E.2d 31 (1992), we held that intoxication does not negate a general intent. It was not necessary for the court to charge on intent or intoxication as a defense. This assignment of error is overruled.

[21] By his next assignment of error, the defendant contends that the trial court erred by refusing to instruct the jury on the lesser included offense of involuntary manslaughter. The Court's decisions in *State v.*

*Hardison*, 326 N.C. 646, 392 S.E.2d 364 (1990) and *State v. Young*, 324 N.C. 489, 380 S.E.2d 94 (1989), are dispositive of this issue. In *Hardison* and *Young*, the Court held that where a jury is properly instructed on the elements of first and second degree murder and thereafter returns a verdict of guilty of first degree murder based on premeditation and deliberation, any error in the trial court's failure to instruct the jury on involuntary manslaughter is harmless even if the evidence would have supported such an instruction.

In this case, the jury was properly instructed on the elements of first degree murder and second degree murder. The jury returned a verdict of guilty of first degree murder based on premeditation and deliberation. To reach this verdict the jury was required to find a specific intent to kill, formed after premeditation and deliberation. Such a finding would necessarily preclude a finding that the killing was the result of an accident or an act of criminal negligence. Therefore, any error in the trial court's failure to instruct the jury on the offense of involuntary manslaughter was harmless.

The defendant contends that *Beck v. Alabama*, 447 U.S. 625, 65 L. Ed. 2d 392 (1980), required the submission of involuntary manslaughter to the jury. In *Beck*, the United States Supreme Court held an Alabama statute unconstitutional which forbade the court from submitting a lesser included offense in a first degree murder case. The Court said if the evidence supported a lesser included offense it must be submitted because of the danger that faced with finding the defendant not guilty when the jury thought he was guilty of something, although not guilty of first degree murder, the jury might find him guilty of first degree murder rather than release him. In *Schad v. Arizona*, 501 U.S. 624, 115 L. Ed. 2d 555, *reh'g denied*, 501 U.S. 1277, 115 L. Ed. 2d 1109 (1991), the United States Supreme Court held that pursuant to *Beck*, a jury verdict of first degree murder was not constitutionally infirm when the lesser included offense of second degree murder had been submitted but the lesser included offense of robbery was not submitted. The Court said the submission of second degree murder alleviated the danger that the jury would find the defendant guilty of first degree murder rather than acquit him although it did not think he was guilty of first degree murder. Pursuant to *Beck* and *Schad*, it was not error to refuse to submit involuntary manslaughter to the jury. This assignment of error is overruled.

[22] By his next assignment of error, the defendant contends that the prosecutor's closing argument was improper and the court committed error by not sustaining the defendant's objections to certain parts of the argument. The prosecutor concentrated a portion of his argument on the testimony of a forensic psychiatrist who testified for the defendant that in his opinion because of the defendant's intoxication at the time of the killing, he could not have formed the specific intent to kill. The psychiatrist testified he based his opinion on interviews with the defendant, the defendant's wife and the defendant's mother. On cross-examination, the psychiatrist testified he did not interview anyone who witnessed the shootings.

In his argument to the jury the prosecutor said that because the psychiatrist did not interview witnesses to the killing, "[h]e is not interested in the truth." This statement is an inference which is based on the testimony of the psychiatrist. It was not error to allow this argument. *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), *rev'd on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988).

[23] The prosecutor referred to the defendant as a "killer." There was no conflict in the evidence that it was the defendant who fired into the vehicle. It was not error to allow this argument. *State v. Westbrook*, 279 N.C. 18, 181 S.E.2d 572 (1971), *sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972).

[24] The prosecutor also argued that the psychiatrist admitted in his testimony that "he was hired for the sole purpose to form this intoxication defense." Although the record does not show the psychiatrist testified he was hired to form a defense, it is evident this was the reason he was employed.

We hold that the defendant was not unfairly prejudiced by the prosecutor's argument. *See State v. Kirkley*, 308 N.C. 196, 300 S.E.2d 144. This assignment of error is overruled.

[25] By his next assignment of error, the defendant contends that during the penalty phase of the trial the court erred by allowing the State to utilize extrinsic evidence to prove that the defendant had previously been convicted of felonies involving the use or threatened use of violence. N.C.G.S. § 15A-2000(e)(3) (1988). The defendant concedes that the prosecution may introduce evidence of the circumstances of the defendant's prior convictions for violent felonies, *State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985), *cert. denied*, 476 U.S.

1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), however, he contends that the evidence introduced in this case was so extensive that its probative value was outweighed by its prejudicial effect. We disagree.

In *State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983), the Court stated,

> We think the better rule here is to allow both sides to introduce evidence in support of aggravating and mitigating circumstances which have been admitted into evidence by stipulation. If the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed. Conversely, it could be to defendant's advantage that he be allowed to offer additional evidence in support of possible mitigating circumstances, instead of being bound by the State's stipulation.

*Taylor*, 304 N.C. at 279, 283 S.E.2d at 780. Control of the State's presentation of evidence concerning the circumstances of the defendant's prior convictions rests in the sound discretion of the trial court and the proper exercise of this discretion will prevent proof of aggravating circumstances from becoming a "mini-trial" of the previous charge. *State v. McDougall*, 308 N.C. 1 , 22, 301 S.E.2d 308, 321, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983).

The record in this case shows that the State sought to prove that the defendant had previously been convicted of three felonies involving the use of violence against the person. As part of its proof, each of the defendant's three prior victims described the circumstances of the defendant's prior violent felonies.

J. Jones testified that in 1973 he and the defendant engaged in a fistfight. Two or three hours after the fight, as Jones was leaving his brother's house, the defendant was waiting in ambush and shot Jones in the right knee with a twelve gauge shotgun. As Jones struggled to re-enter his brother's house, the defendant shot him again. On this occasion, Jones was shot in the left knee. The defendant then approached Jones, pointed the barrel of the gun at Jones' face, and began pulling the gun's trigger. The gun was jammed and did not discharge. Jones managed to wrestle it away from the defendant, and the defendant left the scene. Jones then described the injuries inflicted by the defendant. The injuries to his left knee required amputation of

his lower left leg. Jones' left leg, which was fitted with a prosthesis, was exhibited to the jury. He also testified that the wound to his right knee caused permanent nerve damage in his lower right leg.

H. Jones testified that in 1977, his parents lived next door to the defendant. One evening, Jones was returning home from a party and was about to enter his parents' house, when the defendant stepped around a corner and stuck a twelve gauge, sawed-off shotgun against Jones' chest. Without speaking a word, the defendant fired the gun into Jones' chest. As a result of this gunshot wound, Mr. Jones was hospitalized for nine months. After the wound healed, pellets and debris from the blast remained in his body. The scars on Mr. Jones' body were exhibited to the jury.

J. Fitzgerald testified that in 1977 he was in the Marine Corps and worked part-time as a convenience store clerk. One night, just after he began work, the defendant and an accomplice entered the store. The defendant leaned across the counter and pointed a handgun at Fitzgerald's face. The defendant continued to point the gun at Fitzgerald as he was removing the money from the cash register. After taking the money, the defendant ordered Fitzgerald to come from behind the counter and to lie face down on the floor. The defendant then fled from the scene. Mr. Fitzgerald testified that he was frightened by this experience.

Having reviewed this evidence and the trial court's rulings thereon, we find no abuse of discretion in the trial court's control of these proceedings. As was anticipated in *Taylor*, during cross-examination of the State's witnesses, the defendant was able to elicit testimony tending to temper the evidence of the defendant's prior convictions. This assignment of error is overruled.

[26] The defendant next assigns as error the trial court's denial of his motion for a continuance of the sentencing proceeding. The defendant contends that he was surprised by and unprepared for the live testimony of the victims of the defendant's prior violent felonies. The defendant says that he required a continuance of at least one week to investigate these convictions and prepare a defense. He further contends that the one day continuance offered by the trial court was insufficient and that the denial of his motion violated his rights to due process of law. We disagree.

When a motion to continue raises a constitutional issue, the trial court's ruling thereon involves a question of law which is fully review-

able on appeal. *State v. Searles*, 304 N.C. 149, 282 S.E.2d 430 (1981). However, the denial of a motion to continue, even when grounded on a constitutional issue, constitutes reversible error only when the defendant is prejudiced by the denial of the motion. *Id.* A defendant's rights to due process, assistance of counsel and confrontation of witnesses, include the right to have a reasonable time to investigate and prepare a defense. *State v. Branch*, 306 N.C. 101, 291 S.E.2d 653 (1982). However, what constitutes a reasonable time to investigate and prepare a defense must be determined upon the particular facts of each case. *Id.*

The record shows that the trial of this matter commenced approximately ten months after the defendant was indicted. The defendant was informed prior to the commencement of jury selection, two weeks prior to his motion for a continuance, that the State intended to call the defendant's prior victims as witnesses.

In support of the defendant's motion, defense counsel argued that a continuance was necessary to allow them to review the transcripts of the defendant's prior convictions. However, the record shows that defendant entered pleas of guilty to lesser charges in each of those cases and that therefore no transcripts would be available other than the transcripts of his guilty pleas. These transcripts, along with copies of the indictments, and the judgments and commitments from those cases, were furnished to the defendant by the State almost a month prior to jury selection.

Furthermore, the record does not reveal with any specificity how the defendant believed he would be prejudiced if his motion was denied. Counsel stated that they were unprepared for the testimony of the State's witnesses and that they wanted to investigate the defendant's prior convictions. Counsel, however, did not suggest how such investigation would prepare the defendant to meet the State's evidence. In his brief, the defendant argues that investigation of the prior convictions may have revealed grounds for exclusion of this evidence, yet he does not explain why such an investigation was not conducted prior to trial. We hold that the defendant has failed to show how he was prejudiced by the trial court's denial of his motion for a continuance of the sentencing proceeding. This assignment of error is overruled.

[27] By his next assignment of error, the defendant contends that the trial court erred by excluding certain hearsay evidence. The defendant called a witness who was prepared to testify that the defendant

had told him he was sorry for what he had done. The defendant says that this ruling was improper because it prevented him from offering evidence of his remorse as evidence in mitigation of punishment.

We agree that this was error. When evidence is relevant to a critical issue in the penalty phase of a capital trial, it must be admitted, evidentiary rules to the contrary under state law notwithstanding. *Green v. Georgia*, 442 U.S. 95, 60 L. Ed. 2d 738 (1979). The jury cannot be precluded from considering mitigating evidence relating to the defendant's character or record and the circumstances of the offense that the defendant offers as the basis for a sentence less than death. *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978). The proffered testimony that the defendant was sorry for what he had done showed his remorse and should have been admitted as relevant mitigating evidence in the sentencing phase of his capital trial.

The defendant has not shown prejudice from the exclusion of this evidence, however. Another witness read to the jury a letter the defendant had written to his wife and daughters in which he said: "I have always loved you very special as I have done little John, but as life itself can be a mistake, I just made a great one. I know what Little John 'brother' meant to you." The defendant thus got before the jury evidence suggesting remorse and regret on his part. In light of this evidence and of the facts and circumstances of the case as a whole, we hold that the exclusion of this evidence was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). This assignment of error is overruled.

[28] The defendant next assigns error to the jury instruction given by the trial court when the jury returned from its deliberations to the courtroom. The record shows that after several hours of deliberation, the following events transpired:

THE COURT: . . . It's been indicated that the jury has reached a verdict?

THE BAILIFF: They told me they were ready to come in.

THE COURT: All right, Mr. Bailiff have the jurors return to their respective seats.

(The jurors entered the courtroom.)

THE COURT: All right, let the record reflect that all the jurors have returned to their respective seats. Mr. Jarman, have you reached a unanimous verdict, sir?

STATE v. JONES

[339 N.C. 114 (1994)]

JUROR ONE: Unanimous, sir?

THE COURT: Yes, sir.

JUROR ONE: No, sir.

THE COURT: Did you report to the Court that you were ready? Is that the message?

JUROR ONE: Yes, sir.

THE COURT: Sir?

JUROR ONE: Yes, sir.

THE COURT: Do you have a question of the court, sir?

JUROR ONE: No, sir.

THE COURT: As foreman?

JUROR ONE: No, sir.

THE COURT: And you say you do not have one, unanimous decision?

JUROR ONE: No, sir.

THE COURT: All right, you may be seated for the moment, Mr. Jarman. All right, ladies and gentlemen of the jury, your foreman has reported to the Court that you have not so far been able to reach a unanimous decision. The Court does want to emphasize the fact that it is your duty to do whatever you can to reach a unanimous decision, that the jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement if it can be done without violence to individual judgment. That each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with his or her fellow jurors. In the course of deliberations a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is erroneous. But no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a unanimous decision. With that instruction, I will ask that you retire to your jury room and resume your deliberations. Thank you.

These instructions are in accord with the instructions provided by N.C.G.S. § 15A-1235(b). N.C.G.S. § 15A-1235 was enacted by the General Assembly to provide definite guidelines for instructing a jury whose deliberations have failed to result in a unanimous verdict. *State v. Alston*, 294 N.C. 577, 243 S.E.2d 354 (1978).

STATE v. JONES

[339 N.C. 114 (1994)]

The defendant, relying on this Court's decision in *State v. Smith*, 320 N.C. 404, 358 S.E.2d 329 (1987), contends that in light of the circumstances surrounding the jury's return to the courtroom, the trial court's instruction "probably led to a unanimity that would not otherwise have been attained." *Id.* at 422, 358 S.E.2d at 339. We disagree.

In *Smith*, the question addressed by the Court was "what a jury should be told *when it inquires into the result of its failure to reach a unanimous verdict.*" *Id.* at 422, 358 S.E.2d at 339. In *Smith*, the jury returned to the courtroom without having reached a unanimous verdict and asked the court: "If the jurors' decision is not unanimous, is this automatic life imprisonment or does the jury have to reach a unanimous decision regardless?" *Id.* at 420, 358 S.E.2d at 338. This Court held that, "*in the context of the jury's inquiry*[,]" the court's instructions, which were similar to the instructions given in this case, were misleading and probably resulted in coerced unanimity. *Id.* at 422, 358 S.E.2d at 339.

In this case, the record shows that when the jury returned to the courtroom, it had not reached a unanimous verdict. While the exact purpose of the jury's return to the courtroom is unclear, the foreperson did not inquire as to the effect of the jury's failure to reach a unanimous verdict. We believe that the absence of such an inquiry by the jury distinguishes this case from *Smith*.

We find that the facts of this case more closely resemble those of *State v. Price*, 326 N.C. 56, 388 S.E.2d 84, *sentence vacated*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990), *on remand*, 331 N.C. 620, 418 S.E.2d 169 (1992), *vacated and remanded*, —— U.S. ——, 122 L. Ed. 2d 113, *aff'd*, 334 N.C. 615, 433 S.E.2d 746 (1993), *vacated and remanded*, —— U.S. ——, 129 L. Ed. 2d 888 (1994). In *Price*, the jury had been deliberating several hours when the foreperson informed the trial court, "[w]e're hung." *Id.* at 90, 388 S.E.2d at 104. The court, like the trial court in this case, instructed the jury in accordance with N.C.G.S. § 15A-1235(b). After continuing deliberations for less than an hour, the jury returned a unanimous recommendation that the defendant be sentenced to death. *Id.* at 91, 388 S.E.2d at 104.

This Court held that the trial court's instructions were proper. In so holding, the Court stated that *Smith* was not controlling because the court's instructions were not given in response to an inquiry by the jury regarding the effect of its failure to reach unanimity. In addition, the Court stated that the lesson of *Smith* is that in instructing the jury that its recommendation must be unanimous, "the trial court

must be vigilant to inform the jurors that whatever recommendation they *do* make must be unanimous and not to imply that a recommendation *must* be reached. *Id.* at 92, 388 S.E.2d at 105. The trial court's instructions in *Price* fell within the former category.

In this case, the trial court urged the jury to attempt to reach a unanimous decision but to do so without doing violence to the jurors' individual judgment. The court cautioned the jurors not to surrender their honest convictions solely because of the opinions of their fellow jurors or *merely* for the purpose of returning a unanimous decision. We hold that these instructions, in the context in which they were given, were proper and did not result in a unanimity that would not otherwise have been attained. This assignment of error is overruled.

[29] The defendant next assigns error to the jury instruction given by the trial court in response to a question from the jury regarding the length of a life sentence. The instruction given by the trial court was the same instruction which was approved by this Court in *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279. The instruction at issue evolved from the decision in *State v. Conner*, 241 N.C. 468, 85 S.E.2d 548 (1955), and was a proper response to the jury's inquiry. *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909; *State v. Brown*, 306 N.C. 151, 293 S.E.2d 569. This assignment of error is overruled.

[30] The defendant next assigns as error the trial court's refusal to submit the statutory mitigating circumstance that the defendant had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1) (1988). In deciding whether to submit this statutory mitigating circumstance, the trial court must determine whether a rational jury could conclude that the defendant had no significant history of prior criminal activity. *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988). A defendant's criminal history is considered "significant" if it is likely to affect or have an influence upon the determination by the jury of its recommended sentence. *Id.*

As discussed above, the evidence in this case showed that defendant had three prior felony convictions which involved the use or threatened use of violence to the person of another. Specifically, the evidence showed that the defendant had previously been charged with two counts of assault with a deadly weapon with intent to kill inflicting serious injury and one count of robbery. In each case, the defendant entered pleas of guilty to lesser charges. These pleas resulted in three felony convictions.

Considering the evidence of the defendant's three prior felony convictions, we find no error in the trial court's conclusion that no rational jury could find that the defendant had no significant history of prior criminal activity. Additionally, the record shows that the jury found as an aggravating circumstance that the defendant had been previously convicted of a felony involving violence against the person. As we said in *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470, "it is unimaginable that, despite this finding and the evidence underlying it, the same jury might simultaneously have found that aggravating circumstance to be so irrelevant that it could reasonably infer the existence of the mitigating circumstance in N.C.G.S. 15A-2000(f)(1)." *Id.* at 316, 384 S.E.2d at 491. For the foregoing reasons, this assignment of error is overruled.

[31] Under his next assignment of error, the defendant argues that the trial court erred by refusing to instruct the jury that it was entitled to base its recommendation on any sympathy or mercy the jury might have for the defendant that arises from the evidence presented in this case. The instruction requested by the defendant was identical to the instruction requested by the defendant in *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765 (1992), *cert. denied*, —— U.S. ——, 122 L. Ed. 2d 684, *reh'g denied*, —— U.S. ——, 123 L. Ed. 2d 503 (1993). For the reasons stated in the Court's decision in *Hill*, such an instruction is improper and was therefore properly refused by the trial court. This assignment of error is overruled.

Under his next assignment of error, the defendant contends that the trial court erred by allowing the prosecutor to make grossly improper arguments to the jury during the penalty phase of the trial. The defendant argues that the prosecutor made four separate arguments which were improper and which require that the defendant receive a new sentencing proceeding.

It is well-settled that in North Carolina counsel is granted wide latitude to argue the case to the jury. *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752; *State v. Hamlet*, 312 N.C. 162, 321 S.E.2d 837 (1984). Counsel is permitted to argue the facts that have been presented as well as the reasonable inferences which can be drawn therefrom. *Id.* However, counsel may not argue matters to the jury which are incompetent and prejudicial by injecting his own knowledge, beliefs, or personal opinions or matters which are not supported by the evidence. *State v. Britt*, 288 N.C. 699, 220 S.E.2d 283 (1975). Ordinarily, the control of jury arguments is left to the sound discretion of the trial court

and the trial court's rulings thereon will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976). Where the defendant does not object to a jury argument, this Court will find reversible error only where the jury argument was so grossly improper that the trial court should have intervened *ex mero motu*. With these principles in mind, we will address the defendant's arguments *seriatim*.

[32] First, the defendant says that the prosecutor should not have been allowed to argue that the only way the jury could prevent the defendant from killing again was to return a recommendation that he be sentenced to death. The defendant also says that it was improper for the prosecutor to argue that there had never been a more appropriate case for the death penalty and that the defendant had worked for and earned a sentence of death.

In *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765, this Court found no error in the prosecutor's argument that the only way to ensure that the defendant did not kill again was to sentence him to death. Likewise, there was no error in *State v. Johnson*, 298 N.C 355, 259 S.E.2d 752, where the prosecutor repeatedly argued for the death penalty as the only means of ensuring that the defendant did not kill again. Based on these decisions, the prosecutor's argument that the death penalty would prevent the defendant from killing again was a proper argument.

The evidence showed that the defendant had a history of committing extremely violent acts. The circumstances of the defendant's prior crimes, as well as the circumstances of the crime for which he was being tried, showed that he was a callous man with an explosive, unpredictable temper which might erupt in a deadly assault without provocation or warning. We believe that the prosecutor's argument that there had never been a more appropriate case for the death penalty and that the defendant had worked for and earned a sentence of death, were reasonable arguments in light of the evidence of the defendant's pattern of violent and deadly behavior.

The defendant next contends that the prosecutor argued matters which were not supported by the evidence and which could not reasonably be inferred therefrom. Having reviewed the prosecutors' arguments and the record of the evidence at trial, we conclude that the arguments were proper.

STATE v. JONES

[339 N.C. 114 (1994)]

**[33]** The prosecutor argued that there was no need to ask the defendant whether he believed in the death penalty because he proved that he did when he killed the victim. The prosecutor also argued that the defendant's honorable discharge from the Army was not a circumstance which reduced the defendant's moral culpability for the killing of the victim. The prosecutor noted that Lee Harvey Oswald had also been honorably discharged from the military.

**[34]** We believe that evidence of an unprovoked, shotgun killing of an unarmed man supported the inference that the defendant "believes in the death penalty." Nor was it improper for the prosecutor to argue that the defendant's honorable discharge from the military did not reduce his moral culpability for the murder. It is for the jury to determine whether the submitted nonstatutory mitigating circumstances have mitigating value. *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 602, *on remand*, 327 N.C. 473, 397 S.E.2d 226 (1990), *on remand*, 329 N.C. 233, 404 S.E.2d 842 (1991). Therefore, the prosecutor was free to argue that the defendant's honorable discharge from the military was not a circumstance which mitigated against imposition of the death penalty. In support of this argument, it was not improper for the prosecutor to use Lee Harvey Oswald as an example of a person who also received an honorable discharge.

**[35]** The prosecutor also analogized the defendant to persons, referred to as "back shooters," who existed in the Old West. The prosecutor argued that the defendant, who calmly approached the victim and shot him, was the moral equivalent of a person who would shoot another person in the back. Although the defendant did not shoot the victim in the back, the prosecutor could properly argue that one who, without provocation, shoots an unarmed man is the moral equivalent of a "back shooter."

**[36]** The defendant further says that it was improper for the prosecutor to argue that the only reason the defendant had once testified for the State in a criminal prosecution was to "save his own skin." The evidence showed that in 1977 the State agreed to accept the defendant's plea of guilty to common law robbery in exchange for truthful testimony against his co-defendant. This evidence clearly supported the prosecutor's argument.

**[37]** Next, the defendant says that, because he did not testify, it was improper for the prosecutor to argue that the defendant had shown no remorse for killing his son. This argument was supported by the

evidence and was not otherwise improper. *State v. Price,* 326 N.C. 56, 388 S.E.2d 84; *State v. Brown,* 320 N.C. 179, 358 S.E.2d 1, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

**[38]** The defendant next argues that the prosecutor improperly urged the jury to sentence the defendant to death based on community sentiment. The prosecutor argued:

> You now have become the voice and the moral conscious [sic] of Jones County and as a result . . . . You have an obligation to do something . . . . To do something about serious crime. . . . In other words, ladies and gentlemen, the buck stops here, right here in this courtroom. . . .

This Court has held that prosecutorial argument encouraging "the jury to lend an ear to the community rather than a voice" is improper. *State v. Scott,* 314 N.C 309, 312, 333 S.E.2d 296, 298 (1985). "However, encouraging the jury to act as the voice and conscience of the community is proper and is one of the very reasons for the establishment of the jury system." *State v. Erlewine,* 328 N.C. 626, 634, 403 S.E.2d 280, 284 (1991). The argument above clearly urged the jury to act as the voice of the community and not because of it. This was a proper argument.

Finally, the defendant contends that it was improper for the prosecutor to argue: "[H]e put himself in this position. He gave himself the death penalty." The defendant says that this argument impermissibly diminished the jury's sense of responsibility for recommending a sentence. We disagree.

As authority for his argument, the defendant cites *State v. Jones,* 296 N.C. 495, 251 S.E.2d 425 (1979), and *Caldwell v. Mississippi,* 472 U.S. 320, 86 L. Ed. 2d 231 (1985). Those cases involved arguments whereby the prosecutor informed the jury that the defendant's sentence would automatically be appealed. In the instant case, no reference was made to N.C.G.S. § 7A-27(a) or the right it provides a capital defendant to appeal any sentence a jury might impose. Assuming *arguendo* that it was improper to argue that the defendant "gave himself the death penalty," it is highly doubtful that the jury thought itself relieved of the responsibility of recommending the defendant's sentence. Clearly, the gist of the prosecutor's argument was that the defendant, by committing a capital crime, put himself in the position where he would be tried for his life. This assignment of error is overruled.

[39] By his next assignment of error, the defendant argues that the trial court erred by refusing the defense counsel's request to be allowed to open and close final jury arguments. This contention is without merit.

This Court considered and rejected the same argument in *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). In *Wilson*, we held that N.C.G.S. § 15A-2000(a)(4) provides a capital defendant the right to the final argument during the penalty phase, but that neither this section nor any other statutory provision gives a capital defendant the right to make the first and the last arguments. This assignment of error is overruled.

[40] The defendant next assigns error to the refusal of the court to give a peremptory instruction on sixteen nonstatutory mitigating circumstances, the evidence of which he says was not controverted and inherently credible and which he requested. If the evidence of a nonstatutory mitigating circumstance is not controverted and is not inherently incredible, the defendant is entitled to a peremptory instruction on that circumstance if he requests it. The jury may still reject that circumstance if it finds the evidence is not convincing or if it finds the circumstance does not have mitigating value. *State v. Green*, 336 N.C. 142, 172-174, 443 S.E.2d 14, 32, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547, (1994); *State v. Gay*, 334 N.C. 467, 492, 434 S.E.2d 840, 854 (1993); *State v. Huff*, 325 N.C. 1, 59, 381 S.E.2d 635, 669 (1989), *cert. granted and judgment vacated*, 497 U.S. 1021, 111 L. Ed. 2d 777, *on remand*, 327 N.C. 475, 397 S.E.2d 228 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991); *State v. Fullwood*, 323 N.C. 371, 396, 373 S.E.2d 518, 533 (1988). It was error not to give the peremptory instruction requested by the defendant.

We are confident that this error was harmless beyond a reasonable doubt. Of the sixteen nonstatutory mitigating circumstances submitted, the jury found six of them. This shows that in spite of the error in the charge, the jury found mitigating circumstances that it believed had mitigating value. The quality of the evidence to support the tendered mitigating circumstances not found was equal to that supporting the circumstances found. We are satisfied, therefore, that the jury rejected the mitigating circumstances not found because they determined these circumstances had no mitigating value, not because they rejected the factual basis for these circumstances. The document on which the jury made its recommendations shows that for the tendered mitigating circumstances which were not found not a single

juror felt they had mitigating value. With this unanimous rejection, we do not believe it would have been of any consequence if the court had given a correct charge. We hold this error in the charge was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988).

[41] The defendant next assigns error to the definition of mitigation which the court gave to the jury. The court instructed the jury as follows:

> A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment [than] other . . . first degree murders.

This definition has been approved in *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 446 (1981) and *State v. Hutchins*, 303 N.C. 321, 351, 279 S.E.2d 788, 806. It was not error for the court to give it.

During its deliberations, the jury requested a dictionary to learn "the true definition of mitigation." Defense counsel informed the court that he did not object to the jury's having a dictionary. The court then repeated its earlier instruction on mitigation and also read to the jury the American Heritage Dictionary definition of "mitigate" which was "to make or become less severe or intense" or "moderate." The defendant argues it was error to give the jury this definition from the dictionary.

The defendant assented to allowing the jury to use a dictionary during its deliberations. The defendant thus waived any error by the trial court in giving the jury the dictionary definition of "mitigate." This assignment of error is overruled.

[42] Under his next assignment of error, the defendant contends that the trial court erred by instructing the jury that robbery is a felony which by definition involves the use or threatened use of violence. The defendant says that this instruction relieved the State of its burden of proving the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance beyond a reasonable doubt. The defendant also argues that the instruction amounted to an expression of a judicial opinion on the evidence. We disagree.

In *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, the Court held that where the State introduces the record of a defendant's prior con-

viction, if the prior crime has the use or threat of violence as an element, the trial court may peremptorily instruct on the existence of the aggravating circumstance in N.C.G.S. § 15A-2000(e)(3).

Here, the State introduced the record of the defendant's conviction of common law robbery. Common law robbery is defined as "the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982). Because the use, or threatened use, of violence is an element of common law robbery, the instruction at issue was proper. This assignment of error is overruled.

By his next assignment of error, the defendant contends that the trial court erred by denying his request for an instruction regarding the defendant's parole eligibility. For the often repeated reasons set forth in *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, this assignment of error is overruled.

**[43]** By his next assignment of error, the defendant challenges the constitutionality of the pattern capital sentencing instructions which were adopted as a result of the decision in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 326 N.C. 592, 391 S.E.2d 815 (1990).

In *McKoy*, the United States Supreme Court held that the unanimity requirement of North Carolina's capital sentencing scheme was unconstitutional because it prevented "the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find." *McKoy*, 494 U.S. at 435, 108 L. Ed. 2d at 376. A sentencer may not be precluded from giving effect to all mitigating evidence. *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988); *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973. In *Mills*, on which the *McKoy* decision was based, the Court reasoned that a unanimity requirement allows a single juror's holdout vote on a particular mitigating circumstance to prevent the remainder of the jury from giving that circumstance any effect when weighing mitigating circumstances against aggravating circumstances. *Mills*, 486 U.S. at 376, 100 L. Ed. 2d at 393.

In the instant case, the trial court instructed the jury in Issue Two, in accordance with *McKoy*, that if *one or more* jurors found a mitigating circumstance to exist they should write "yes" in the space pro-

vided. With regard to the third sentencing issue, the weighing issue, the court instructed in pertinent part as follows:

> If you find from the evidence one or more mitigating circumstance[s], you *must* weigh the aggrevating [sic] circumstances against the mitigating circumstances. When deciding this issue, each juror *may* consider any mitigating circumstance or circumstances that *the juror determines to exist* by a preponderance of the evidence in issue two. (Emphasis added.)

With regard to determining the fourth issue, whether the aggravating circumstances were sufficiently substantial to call for imposition of the death penalty, the court instructed:

> And in deciding this issue you're not to consider the aggrevating [sic] circumstances standing alone. You *must* consider them in connection with any mitigating circumstances *found by one or more of you.* When making this comparison, each juror *may* consider any mitigating circumstance or circumstances *that juror determined to exist* by a preponderance of the evidence. (Emphasis added.)

The defendant argues that these instructions allowed jurors to disregard properly found mitigating circumstances. The defendant also contends that each juror should be required to consider every mitigating circumstance found by any one of the jurors. We disagree.

The jury was instructed under Issue Three that it *must* weigh any mitigating circumstances it found to exist against the aggravating circumstances. This directive to weigh the mitigating circumstances against the aggravating circumstances is not ambiguous. The next sentence of the instruction describes which mitigating circumstances are to be considered by the jurors in this weighing process. The word "may" indicates that each juror is allowed to consider those mitigating circumstances that he or she may have found to exist by a preponderance of the evidence.

The rule of *McKoy* is that jurors may not be prevented from considering mitigating circumstances which they found to exist in Issue Two. Far from precluding a juror's consideration of mitigating circumstances he or she may have found, the instant instruction expressly instructs that the evidence in mitigation *must* be weighed against the evidence in aggravation. Thus, the instruction given by the trial court fully comports with the decision in *McKoy*.

Nor are we persuaded by the defendant's contention that *McKoy* requires a juror to consider, at Issue Three and Issue Four, those mitigating circumstances which he or she did not find, but which were found by one or more other jurors. Were we to adopt this reading of *McKoy* and its progenitors, we would create an anomalous situation where jurors are required to consider mitigating circumstances which are only found to exist by a single holdout juror. We do not believe that the decisions in *McKoy* or *Mills* intended this anomalous result. The jury charge given in this case did not preclude the jurors from giving effect to all mitigating evidence they found to exist. This charge eliminates the defect found unconstitutional in *McKoy*. This assignment of error is overruled.

**[44]** Next, the defendant says that the trial court erred in sentencing him for assault with a deadly weapon with intent to kill inflicting serious injury and discharging a firearm into occupied property. The defendant says that the trial court should have found and considered the statutory mitigating circumstance that the relationship between the defendant and the victim was extenuating. N.C.G.S. § 15A-1340.4(a)(2)i (1988). We disagree.

This case is factually similar to the facts of *State v. Michael*, 311 N.C. 214, 316 S.E.2d 276 (1984). In *Michael*, the defendant pleaded guilty to second degree murder. The defendant contended that the trial court erred by failing to find and consider the mitigating factor that the relationship between the defendant and the victim was otherwise extenuating. N.C.G.S. § 15A-1340.4(a)(2)i (1988). The evidence showed that the defendant was the victim's son. During the morning prior to the murder, the defendant and the victim had argued. Later the same day, the victim spanked the defendant and held him by his hair while banging his head on the corner of a bed. That night, when the victim went to sleep on the couch, the defendant shot him in the head with a shotgun.

This Court held that the evidence in *Michael* was insufficient to compel the trial court to find the statutory mitigating factor. Unlike the evidence in *Michael*, which was characterized as credible, the only evidence in this case which tended to show the existence of the mitigating factor at issue was based on the self-serving statements of the defendant. We hold that the trial court did not err by failing to find and consider N.C.G.S. § 15A-1340.4(a)(2)i. This assignment of error is overruled.

**STATE v. JONES**

[339 N.C. 114 (1994)]

The defendant brings forth additional assignments of error for preservation purposes. As we have previously decided the issues adversely to the defendant's position, we will not revisit those questions herein.

Having determined that there was no error in the defendant's sentencing proceeding, we are required by N.C.G.S. § 15A-2000(d) to determine (1) whether the record supports the jury's finding of the aggravating circumstances upon which the sentence of death was imposed, (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, and (3) whether the sentence is excessive or disproportionate to the penalty imposed in the pool of similar cases, considering both the crime and the defendant. *State v. Quesinberry*, 325 N.C. 125, 381 S.E.2d 681 (1989), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603, *on remand*, 327 N.C. 480, 397 S.E.2d 233 (1990), *on remand*, 328 N.C. 288, 401 S.E.2d 632 (1991).

**[45]** The jury in this case found two aggravating circumstances: that the defendant had previously been convicted of a felony involving the use or threatened use of violence to the person, N.C.G.S. § 15A-2000(e)(3), and that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person, N.C.G.S. § 15A-2000(e)(10). As discussed herein, the evidence showed that the defendant had previously been convicted of common law robbery and two counts of assault with a deadly weapon inflicting serious injury. This evidence was sufficient to support the jury's finding of the aggravating circumstance in N.C.G.S. § 15A-2000(e)(3).

**[46]** The evidence was also sufficient to support the jury's finding that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person. N.C.G.S. § 15A-2000(e)(10) (1988). This Court has previously held that a shotgun is a weapon which is normally hazardous to more than one person if it is fired into a group of two or more persons in close proximity to one another. *State v. Moose*, 310 N.C. 482, 313 S.E.2d 507 (1984). Likewise, a great risk of death is created when a shotgun is fired at close range into the occupied passenger compartment of an automobile. *Id.*

The evidence in this case showed that the defendant, from a distance of only ten feet, fired a twelve gauge shotgun into the rear seat

of the vehicle occupied by the victim and three other persons. The gun was loaded with a three inch, double aught, shotgun shell. The blast immediately killed one passenger and injured another. We hold that this evidence was sufficient to support the jury's finding that the defendant knowingly created a great risk of death to more than one person by use of a weapon which would normally be hazardous to the lives of more than one person.

Having thoroughly examined the record, transcripts and briefs in this case, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factors.

[47] We now turn to our final statutory duty of conducting a proportionality review. In determining whether a sentence of death is disproportionate, we consider both the defendant and the crime, and compare them to a pool of similar cases. *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983). In *Williams*, we said that the pool of similar cases to which we would compare the case under review would consist of:

> *[A]ll cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*Id.* at 79, 301 S.E.2d at 355. The pool of similar cases includes only those cases which this Court has found to be free from error in both phases of the trial. *State v. Jackson*, 309 N.C. 26, 45, 305 S.E.2d 703, 717 (1983). In conducting our proportionality review, we

> compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and defendant's character, background, and physical and mental condition. If, after making such a comparison, we find that juries have consistently been returning death sentences in the similar cases, then we will have a strong basis for concluding that a death sentence in the case under review is not excessive or disproportionate. On the other hand if we find that juries have consistently

**STATE v. JONES**

[339 N.C. 114 (1994)]

been returning life sentences in the similar cases, we will have a strong basis for concluding that a death sentence in the case under review is excessive or disproportionate.

*State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). However, while we expressly analogize and distinguish many cases, we do not feel bound to cite all cases that we consider. *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335.

The defendant contends that this case is similar to those cases where the defendant killed the victim during an emotional incident or after the victim had in some way provoked the defendant. We disagree.

The evidence showed that the defendant calmly and deliberately searched for the victim. When he encountered the victim walking along the roadway, he stopped his car, removed a shotgun from the rear seat, and walked toward the unarmed victim and his companions. As the victim pleaded for his life, the defendant calmly approached Ms. Jones' car to within ten feet and fired through the car's rear door. The blast fatally wounded the defendant's son and injured one of the children seated with him. The defendant then reloaded his gun, walked back to his car and drove away.

This evidence falls short of showing that the defendant acted because he was provoked or threatened by the victim. Nor do we believe that the jury's finding that at the time of the killing the defendant was under the influence of a mental or emotional disturbance means that the defendant was in a state of emotional excitement.

We believe that the significant characteristics of the defendant and the crime in this case are reflected by the jury's answers on the Issues and Recommendation Sheet. Regarding the defendant, the jury found that he had previously been convicted of a felony involving the use or threatened use of violence, and that at the time of the crime he was under the influence of a mental or emotional disturbance and in need of treatment for alcoholism and emotional disturbance. Regarding the defendant's crime, the jury found that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person. During the guilt phase, the jury found that the murder was premeditated and deliberate. Of these features, we believe

the defendant's three prior felony convictions to be the most significant.

Our review of the proportionality pool has revealed only one case where the jury found the same two aggravating circumstances which were found by the jury in this case. *State v. Hill*, 308 N.C. 382, 302 S.E.2d 202 (1983). The record in *Hill* reveals that the State's evidence showed that the defendant and two accomplices planned to commit robberies. The plan was for the female accomplice to stand by her car on the side of the road and act as if she was having car trouble. The defendant and the male accomplice would arm themselves and hide in nearby bushes until some passing motorist stopped to assist the female accomplice. The men would then come out of the bushes and rob the would-be samaritan.

After committing one robbery, the conspirators moved to another location and positioned themselves as previously planned. When three men stopped to render assistance to the female, the defendant and the other male robbed the men at gunpoint. The three men were then removed to another location. Two of the men were placed in the trunk of their car. The defendant took the third man and forced him to lie on the ground. The defendant then murdered the third man by shooting him in the head. Before leaving the scene, the defendant fired two bullets into the trunk of the car where the other two victims had been confined.

The jury found three aggravating circumstances and two mitigating circumstances. The jury recommended that the defendant be sentenced to life imprisonment.

In *Hill*, the defendant had one prior conviction for common law robbery. In this case, the defendant had previously been convicted of three violent felonies. This demonstrates that the defendant is an extremely violent individual who is uncommonly inclined towards using deadly force against unarmed, unsuspecting victims.

In addition, the jury in this case found that the murder was premeditated and deliberate whereas the murder in *Hill* was committed in the course of a felony. A conviction based on the theory of premeditation and deliberation indicates a more calculated and cold-blooded crime. *State v. Artis*, 325 N.C. 278, 384 S.E.2d 470.

We have reviewed only two other cases in the pool where the jury found that the murder was committed with a weapon which endangered the lives of more than one person. *State v. Evangelista*, 319 N.C. 152, 353 S.E.2d 375 (1987); *State v. King*, 301 N.C. 186, 270

**STATE v. JONES**

[339 N.C. 114 (1994)]

S.E.2d 98 (1980). In both of those cases, the defendants were sentenced to life imprisonment. However, neither of those defendants had been previously convicted of felonies involving the use or threatened use of violence. Because we believe that the defendant's multiple prior convictions for violent felonies constitute the most prominent feature of this case, we are not persuaded that *King* and *Evangelista* indicate that the defendant's sentence is disproportionate. Moreover, we do not believe that the number of cases in the pool in which the N.C.G.S. § 15A-2000(e)(10) circumstance has been found is sufficiently large to allow us to make any conclusions as to the weight that is generally accorded this circumstance during jury deliberations.

We note that a prior conviction for a felony involving the use of violence is among the most prevalent aggravating circumstances found in death-affirmed cases. *State v. Artis*, 325 N.C. 278, 342, 384 S.E.2d 470, 506. Although the presence of this aggravating circumstance is not determinative of whether the sentence in this case is proportionate, it is one indication that the sentence is not excessive or arbitrarily imposed. *Id.*

As previously discussed herein, the crimes in this case were both deliberate and callous. The defendant acted with total disregard for the lives of all the persons seated in the back seat of the automobile. The defendant was not dissuaded from action by the presence of small, innocent children and he showed no remorse for the injuries he inflicted on young Marrissa or for the death of his own son. As already discussed, the defendant's history of violent felonies unmistakably reveals his uncommon willingness to use deadly force against unsuspecting and innocent victims.

The murder in this case was the product of meanness and the culmination of a lengthy history of violence. The defendant exhibited a complete absence of compassion for his son, as well as the small children who sat beside him, as he begged for the defendant to spare his life. Based on our review of the cases set forth herein, as well as the other similar cases in the proportionality pool, we are led to the inescapable conclusion that the sentence of death was not excessive or disproportionate.

We hold that the defendant received a trial and sentencing proceeding free from prejudicial error, that the jury did not sentence the defendant out of prejudice or passion, and that the sentence is proportionate.

NO ERROR.

Justice Parker did not participate in the consideration or decision of this case.